UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIRK A. SPRINGSTED and SANDRA KOOREJIAN, <br> *Plaintiffs*, <br> *v.* <br> VALENTI MOTORS, INC., VOLKSWAGEN GROUP OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFT, <br> *Defendants*. | Civil No. 3:16cv214 (JBA) <br><br> May 20, 2016 |

**RULING ON MOTION TO REMAND AND MOTION TO STAY**

Plaintiffs Kirk. A. Springsted and Sandra Koorejian brought this suit against Defendants Valenti Motors, Inc., Volkswagen Group of America, Inc., and Volkswagen Aktiengellschaft in state court, alleging breach of the implied warranty of merchantability (Counts One and Three), breach of express warranty (Count Two), fraud by concealment (Count Four), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Five). On February 9, 2016, Defendants removed the case to this Court, alleging that the Court has jurisdiction pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), or alternatively, pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(3)(B). (Notice of Removal [Doc. # 1].) Plaintiffs now move [Doc. # 8] to remand the case to state court and for attorneys' fees for work in connection with their motion. Defendants oppose Plaintiffs' motion and additionally seek a stay [Doc. # 15] pending transfer of this case to the Multi-District Litigation court. For the following reasons, Plaintiffs' motion is granted and Defendants' motion is denied as moot.

I.      **Factual Background**

Plaintiffs allege the following facts in their Complaint. (*See* Compl., Ex. 1 to Notice of Removal.) In 2015, the Environmental Protection Agency ("EPA") issued a Notice of Violation ("NOV"), detailing the use of "sophisticated software in the Volkswagen and Audi diesel vehicles sold by Volkswagen" to "detect[] when the vehicle is undergoing official emissions testing and turn[] full emissions controls on only during the test." (*Id.* ¶ 9.) "[A]t all other times that the vehicle is running, the emissions controls are suppressed." (*Id.*) "Consequently, these Volkswagen vehicles meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides at up to 40 times the standard allowed under United States law and regulations." (*Id.*) "The software produced and used by Volkswagen is a 'defeat device' as defined by the Clean Air Act." (*Id.*)

"According to the EPA NOV, Volkswagen installed its 'defeat device' in . . . the 2013 Volkswagen Passat TDI," which was nonetheless "marketed . . . as [a] CleanDiesel' vehicle[]." (*Id.* ¶¶ 12–13.) Plaintiffs purchased this vehicle in May 2013 "on the reasonable, but mistaken, belief that their Vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life," and "because of the 'CleanDiesel' system, as represented through advertisements and representations made by Volkswagen and Valenti." (*Id.* ¶¶ 20–21.)

Plaintiffs allege that the Vehicle "is inherently defective in that it does not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested." (*Id.* ¶ 28.) Plaintiffs additionally accuse Volkswagen of

2

fraudulently concealing material facts about the Vehicle, including whether it complied "with federal and state clean air law and emissions regulations," to Plaintiffs' detriment. (Id. ¶ 29.) Finally, Plaintiffs claim that Volkswagen violated CUTPA by: "knowingly and intentionally concealing from Plaintiffs that the Vehicle suffered from a design defect"; "marketing the Vehicle as possessing function and defect-free, EPA compliant CleanDiesel engine systems"; "purposefully installing an illegal 'defeat device' in the Vehicle to fraudulently obtain EPA certification and cause the Vehicle to pass emissions tests when in truth and fact it did not pass such tests"; "violating federal laws, including the Clean Air Act"; and "violating other Connecticut laws, including Connecticut laws governing vehicle emissions and emission testing requirements." (Id. ¶ 37.)

## II.    Discussion

### A.  Subject Matter Jurisdiction

"Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Comm. Workers Union v. CenterMark Props. Meriden Square,* 30 F.3d 298, 301 (2d Cir. 1994). A case may only be removed to a federal court if it could have been brought there initially; in other words, the case must fall under the court's original jurisdiction. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). District courts have original jurisdiction to hear federal questions, that is, "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.

§ 1331. "For statutory purposes, a case can 'aris[e] under' federal law in two ways[:]" (1) "when federal law creates the cause of action asserted," and (2) much more rarely, as explained by the Supreme Court in *Grable*, "when a claim finds its origins in state rather than federal law" but turns on the resolution of a federal question. *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013).

Plaintiffs contend that this Court lacks jurisdiction to hear this case because the complaint alleges only state law claims. (Mot. Remand at 1.) Defendants respond by asserting two bases of jurisdiction: *Grable* and the Magnuson-Moss Warranty Act. The Court addresses each argument in turn.

### 1. *Grable*

The Supreme Court describes the facts and holding of *Grable* as follows:

*Grable* involved real property belonging to Grable & Sons Metal Products, Inc. (Grable), which the Internal Revenue Service (IRS) seized to satisfy a federal tax deficiency. Grable received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing (Daure). Five years later, Grable sued Darue in state court to quiet title. Grable asserted that Darue's record title was invalid because the IRS had conveyed the seizure notice improperly. The governing statute, 26 U.S.C. § 6335(a), provides that "notice in writing shall be given . . . to the owner of the property . . . or shall be left at his usual place of abode or business. . . ." Grable maintained that § 6335(a) required personal service, not service by certified mail.

Darue removed the case to federal court. Alleging that Grable's claim of title depended on the interpretation of a federal statutory provision, *i.e.*, § 6335(a) of the Internal Revenue Code, Darue invoked federal-question jurisdiction under 28 U.S.C. § 1331. We affirmed lower court determinations that the removal was proper. "The meaning of the federal tax provision," we said, "is an important issue of federal law that sensibly belongs in a federal court." Whether Grable received notice adequate under

> § 6335(a), we observed, was "an essential element of [Grable's] quiet title
> claim"; indeed, "it appear[ed] to be the only . . . issue contested in the case."

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699–700 (2006) (internal

citations omitted).

*Grable* "emphasized," however, "that it takes more than a federal element 'to open

the "arising under" door.'" *Id.* at 701 (quoting *Grable*, 545 U.S. at 313). Rather, under

*Grable*, "federal jurisdiction over a state law claim will lie [only] if a federal issue is: (1)

necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

federal court without disrupting the federal-state balance approved by Congress." *Gunn*,

133 S.Ct. at 1065. "Where all four of these requirements are met . . . jurisdiction is proper

because there is a 'serious federal interest in claiming the advantages thought to be inherent

in a federal forum,' which can be vindicated without disrupting Congress's intended

division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–

14).

Defendants here contend that although Plaintiff raises only state law claims, each

of those claims "derives from, and is based upon, the EPA Notice of Violation and the

EPA's public charges of alleged violations of the Clean Air Act." (Mot. to Stay at 12.)

Further, Defendants assert, "each cause of action in the Complaint requires a resolution of

substantial questions of federal law, including whether or the extent to which [Volkswagen

Group of America] evaded federal emissions standards, thereby violating federal law and

Environmental Protection Act regulations, namely the Clean Air Act, and the appropriate

remedy for such purported violations." (*Id.* at 12–13.) Plaintiffs do not respond to these

arguments. Nonetheless, the Court has an independent duty to assure itself that it has

subject matter jurisdiction to hear the case. *See Consol. Edison Co. of New York v. UGI Utilities, Inc.*, 423 F.3d 90, 103 (2d Cir. 2005) ("[T]he absence of [subject matter] jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." (internal quotation marks omitted)).

The Court is not persuaded that *Grable* is applicable here. As an initial matter, it is not evident that a determination that Defendants violated the Clean Air Act is *necessary* to the adjudication of Plaintiffs' claims. While Plaintiffs' claims are based in part on the allegation that the Vehicle does not comply with federal law, they are also based on the assertion that the Vehicle does not comply with *state* law. With respect to Counts One to Three (regarding merchantability), if the court found that the Vehicle did not comply with state emission standards, it could conclude that Defendants breached the warranty without reaching the question of whether the Vehicle complied with federal emissions standards. Similarly, in Count Four (fraud by concealment), because Plaintiffs allege that Volkswagen knowingly made false representations regarding the Vehicle's compliance with federal and *state* law, and that Volkswagen made false representations regarding how "clean" the cars were, a court could resolve the claim without reaching any federal issues. Finally, Count Five (CUTPA), specifically alleges that Defendants violated federal laws, but it also alleges violations of Connecticut laws and misrepresentation regarding the quality of the Vehicle. Because each of the counts in the Complaint could be resolved without resort to federal law, this case does not *necessarily* raise a federal question. *Cf. New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140 (2d Cir. 2012) (finding federal issues not necessarily raised

where the court would not reach issues implicating federal law if the plaintiffs could establish that the construction of their casino complied with state and local law).

Further, the Court is not convinced of the applicability of the second *Grable* factor—actually disputed. Defendants do not dispute that the EPA, the agency charged with administering the Clean Air Act, has issued a NOV finding that the Vehicle does not comply with the Clean Air Act's standards. As a result, whether there is an "actually disputed" issue here implicated federal law is unclear. *Cf. Vinmar Overseas, Ltd. v. OceanConnect, LLC*, No. CIV.A. H-11-4311, 2012 WL 3599486, at \*10 (S.D. Tex. Aug. 20, 2012) ("As to the first requirement for federal-question jurisdiction, it is unclear that there is any disputed federal issue necessary to resolve the state-court claims Vitol has asserted. The parties do not dispute that the EPA has found the [Renewable Identification Numbers] at issue invalid.").

Defendants fare little better with the third and fourth *Grable* factors—substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where, as here, Congress has declined to create a private remedy for the violation of a federal statute, the Supreme Court has held that this Congressional determination "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986).

Because Defendants have not met their burden of demonstrating that federal jurisdiction is appropriate here under *Grable*, the Court declines to exercise jurisdiction on those grounds. The Court thus turns to Defendants' second claim for why the Court has

jurisdiction of this case.

### 2. Magnuson-Moss Warranty Act

Defendants next assert that the Court has jurisdiction over this case pursuant to the MMWA, which provides that certain consumer claims of breach of warranty may be heard in federal court if the amount in controversy is greater than $50,000 (exclusive of interest and costs). *See* 15 U.S.C. § 2310(d)(3)(B). Although Plaintiffs expressly limit their total claim of damages for their causes of action under the MMWA to less than $50,000, Defendants contend that in fact the amount Plaintiffs seek exceeds $50,000 because Plaintiffs seek punitive damages for Counts Four and Five, which should be aggregated with the damages they seek under the MMWA, as well as the damages they seek against all defendants. (*See* Mot. to Stay at 14–18.)

Defendants recently raised identical arguments, citing the same caselaw, in opposing a motion to remand in *Poriss v. Gene Langan Volkswagen of Connecticut, Inc.*, No. 3:15-CV-01837 (JAM), 2016 WL 1271460, at *3 (D. Conn. Mar. 31, 2016). As Judge Meyer explained in rejecting Defendants' claims regarding punitive damages:

> When it comes to deciding whether a complaint alleges a requisite amount in controversy to allow for federal jurisdiction, it has long been the rule that a plaintiff may avoid federal jurisdiction by expressly limiting the claimed amount to less than the federal jurisdictional threshold. In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), the Supreme Court made clear that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 288. Thus, a plaintiff who wishes to avoid federal jurisdiction "may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove" the case from state court to a federal court. . . . The *St. Paul* rule clearly controls this case. . . .
>
> [Further] [b]oth of the "well established" cases that are cited by defendants do not stand for the proposition that defendants claim. First, defendants cite

8

> *Makuch v. Stephen Pontiac-Cadillac, Inc.*, 2013 WL 45887 (D. Conn. 2013).
> Although it is true that the plaintiff in *Makuch* alleged a CUTPA claim in
> addition to a claim under the Magnuson-Moss Warranty Act, there is
> nothing to support defendants' claim that the court in *Makuch*
> "aggregate[ed] punitive damages under MMWA and Connecticut Unfair
> Trade Practice Act (CUTPA)." To the contrary, the court made clear in
> *Makuch* that "[p]endent state law claims are not included in determining
> whether the value of 'all claims' reaches the jurisdictional threshold." 2013
> WL 45887, at *1. . . .
>
> Defendants fare no better with their reliance on *Jiminez v. Going Forward,
> Inc.*, 25 F. Supp. 2d 54 (D. Conn. 1998), a case that defendants claim
> "aggregate[ed] 'punitive damages under Magnuson-Moss and the
> Connecticut Unfair Trade Practices Act (CUTPA).'" Defendants elsewhere
> claim that the court in *Jiminez* "held" that "'punitive damages under
> Magnuson-Moss and the Connecticut Unfair Trade Practices Act' are
> included in the jurisdictional calculus." The court in *Jiminez* did no such
> thing. The snippet of language quoted by defendants from *Jiminez* was not
> the court's holding but was a description of what it was that the plaintiff was
> claiming; the full sentence at issue reads: "Plaintiff also seeks punitive
> damages under Magnuson-Moss and the Connecticut Unfair Trade
> Practices Act ('CUTPA')." 25 F. Supp. 2d at 55. The court in *Jiminez* then
> went on to reiterate "that pendent state law claims should not be counted
> toward Magnuson-Moss' jurisdictional threshold." *Ibid.* And the Court
> went on to *hold* that "this Court concludes that Plaintiff's state law claims
> should not be considered when calculating Magnuson-Moss' jurisdictional
> amount." *Ibid.*

*Id.* at *2–4 (internal citations to defendants' briefs and footnotes omitted). The Court

adopts Judge Meyer's well-reasoned analysis, and rejects Defendants' punitive damages

argument for the reasons cited above.

The Court likewise finds no merit in Defendants' alternative argument—that

"Plaintiffs' analysis fails to account for the combined amount of punitive damages they seek

against all defendants" (Mot. for Stay at 17)—relying once again on the comprehensive

analysis in *Poriss*:

[Defendants'] argument is incorrect, because it overlooks well-established law that—no matter how many claims or defendants—plaintiff will not be entitled to double– or multiple-recovery, either with respect to her claim for compensatory damages . . . or, more importantly, with respect to her claim for such punitive damages that might be allowed under the Magnuson-Moss Warranty Act.

. . . [T]he measure of punitive damages for a breach-of-warranty claim under the Magnuson-Moss Warranty Act is the measure of damages that could be recovered for a cognate state law claim of a tortious breach of warranty. Connecticut does not have a statutory measure of punitive damages for a claim of tortious breach of warranty; the only punitive damages that are allowable for a tortious breach-of-warranty claim are common-law punitive damages, which are limited to attorney's fees and costs.

Connecticut case law makes clear that the purpose of common-law punitive damages is to do no more than make a plaintiff whole for the costs of litigation. Common-law punitive damages are not awarded to enrich a plaintiff with more in damages than the harm and costs that she has incurred.

Accordingly, as the Connecticut Appellate Court has recently noted, common-law punitive damages may only be collected once by a plaintiff under the "settled common-law rule limiting punitive damages to a single recovery of litigation expenses because their purpose is to make a victim whole . . . "

Unfortunately, defendants do not cite or acknowledge these Connecticut cases that explain the limited purpose and scope of common-law punitive damages—that is, the very type of, and only type of, punitive damages that could potentially be awarded to plaintiff for her claims under the Magnuson-Moss Warranty Act. Instead, defendants cite and rely on punitive damage cases that do not involve the application by Connecticut courts of common-law punitive damages.

2016 WL 1271460, at *4–5 (internal citations omitted). Because this Court concludes that

it lacks jurisdiction to hear this case, the case will be remanded to the state court, and

Defendants' motion to stay is denied as moot.

### B.  Motion for Attorneys' Fees

Finally, Plaintiffs seek attorneys' fees under 28 U.S.C. § 1447(c) for time spent on their motion to remand, on the grounds that Defendants "improperly removed this action" even though the "complaint explicitly limited the claimed damages, including the common law punitive damages against Volkswagen, to less than $50,000." (Mot. to Remand at 4.) Under § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court does not find that to be the case here, where there was at least a plausible basis to claim that the Court had jurisdiction pursuant to *Grable*.

### III.    Conclusion

For the foregoing reasons, Plaintiffs' Motion [Doc. # 8] to Remand is GRANTED but Plaintiffs will not be awarded attorneys' fees for counsel's time on this motion, and Defendants' Motion [Doc. # 15] is DENIED as MOOT. This case is remanded to the Superior Court for the Judicial District of New Haven at New Haven for adjudication, and the Clerk is requested to close the case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 20th day of May, 2016.

11